# EXHIBIT A

ORIGINAL

CSC LEASING COMPANY

CSC Leasing Co.
**MASTER LEASE AGREEMENT**
**Agreement No. 2020036**

This MASTER LEASE AGREEMENT ("Master Lease") is entered into upon this, 13th day of March 2020 by and between CSC Leasing Co., a Virginia corporation having offices at 6806 Paragon Place, Suite 170, Richmond, Virginia 23230 ("Lessor") and RK Pharma Inc., a Delaware corporation having principal offices at 401 N Middletown Rd.,Bldg.215/215A, Pearl River NY 10965, ("Lessee").

**1. DEFINITIONS:**
**(a)** The "Acceptance Date" means the date on which Lessee certifies that the Equipment has been installed, is in good working order, and has been accepted by the Lessee. Lessee shall execute a Certificate of Installation and Acceptance ("Acceptance Certificate") verifying Lessee's acceptance of the Equipment as of the Acceptance Date.

**(b)** The "Commencement Date" means the date on which the initial term of the lease related to an individual Schedule begins. If the Acceptance Date of the Equipment under a Schedule is the first day of the month, the Commencement Date shall be the Acceptance Date; otherwise, the Commencement Date shall be the first day of the month following the Acceptance Date.

**(c)** The "Equipment" means the equipment, machines, devices, features, and other items listed in each equipment lease Schedule executed pursuant hereto and hereby made a part hereof.

**(d)** "Schedule" means the document entered into from time to time between Lessor and Lessee, which is incorporated into the Master Lease, and that establishes the specific terms and conditions of leasing the Equipment, such as the Basic Rental, Term, description of the Equipment and the Acceptance Certificate for such Equipment

**(e)** The "Secured Party" means a third-party lender who holds a security interest or lien against a pledged asset, such as the Equipment being leased under this Agreement.

**(f)** The "Security Deposit" means any payments made by the Lessee to Lessor as a security deposit in connection with a Schedule or this Master Lease.

**(g)** The "Term" shall mean, with respect to each Schedule, on the period starting on the Commencement Date and continuing for the number of full months set forth in such Schedule, and any renewal thereof.

**(h)** The "Vendor" means the manufacturer or vendor under whose name the Equipment is sold, as may be shown in each Schedule.

**(i)** The "Basic Rental" means the rental for the Equipment leased under each Schedule as set forth in such Schedule.

**2. LEASE OF EQUIPMENT:**
**(a)** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor, in accordance with the terms and conditions of this Master Lease and applicable Schedule(s), all Equipment in the Schedule(s) which is (are) or may from time to time be executed pursuant to this Master Lease. Each Schedule shall incorporate by reference all terms and conditions of this Master Lease except as provided herein together with such other terms or amendments, which may be specified in such Schedule. A Schedule shall not become effective until it is executed by both Lessee and Lessor. The Schedule(s) shall take precedence over this Master Lease in the event of conflicts.

**(b)** The parties intend and agree that: (i) the Equipment shall remain personal property, and Lessor's title thereto shall not be impaired, notwithstanding its being affixed to any real property; (ii) this Master Lease and the Schedules constitute a true lease, which is a "finance lease," as such term is defined in the Uniform Commercial Code ("UCC") under Article 2A and not a sale or retention of security interest; (c) title to the Equipment shall at all times remain in Lessor, and Lessee shall acquire no interest therein other than a leasehold interest.

**3. TERM OF LEASE:**
The term of this Master Lease shall commence on the date set forth above and shall continue in effect thereafter until the later of such time as it is terminated as provided herein, including through execution of a superseding Master Lease, or the termination of all Schedules executed pursuant to this Master Lease. Unless otherwise set forth in a Schedule, written notice of Lessee's termination of each Schedule shall be provided to Lessor at least three (3) months prior to the expiration of the Term of such Schedule. In the event that Lessee's written notice is not received by Lessor as specified herein, the terms of the lease related to such Schedule shall be (i) extended for additional three (3) month periods at the then existing Basic Rental (which three (3) month periods shall be deemed to be part of the Term) until terminated, or (ii) at Lessor's option, be terminated at the end of the Term or any three (3) month period thereafter. Any notice of termination by Lessee may not be revoked without the consent of Lessor.

**4. RENTAL:**
**(a)** Lessee shall pay to Lessor as rental for the Equipment leased under each Schedule the Basic Rental set forth in such Schedule. The Basic Rental shall be due and payable in advance on or before the first (1st) day of each month after receipt of an invoice by Lessee from Lessor or Lessor's assignee. If the Acceptance Date does not fall on the first day of a month, the payment for the first partial month will be prorated on the basis of the days in the partial month. Except for invoices relating to partial months, invoices shall be sent to Lessee by first class mail, postage prepaid, or by email, on or before the 15th day of the month preceding that for which the Basic Rental is due to afford Lessee sufficient time to process the invoice for timely payment on the first day of the subsequent month. In the event Lessee does not make payment of any Basic Rental or other monies due hereunder within five (5) days of its due date, *Lessee shall be liable to Lessor for a late payment fee of the greater of (i) one hundred dollars ($100.00) and (ii) five percent (5%) of the past due balance from the date due thereof, and* shall pay such amount promptly to Lessor or Lessor's assignee.

**(b)** In addition to the Basic Rental, Lessee shall pay to Lessor an amount equal to all taxes that are levied or based on this transaction, the Basic Rental, this Master Lease, any and all Schedules, and/or the Equipment or its use, lease, sale, operation, control or value, including, without limitation, state and local sales, use, excise, purchase, property, added value or other taxes, or amounts in lieu thereof paid or payable by Lessor in respect of the foregoing (collectively, "Taxes"), but excluding only federal and state income taxes of Lessor. Personal Property taxes, if any, with respect to the Equipment, shall be filed with the appropriate authorities by Lessor, and reimbursed by Lessee as and when invoiced by Lessor. Lessee shall be liable for any penalties, interest and other charges in respect of said taxes due to improper filing as a result of a change in the location of the Equipment or Lessee not reported to Lessor in writing.

ORIGINAL

**(c)** Lessee hereby authorizes Lessor to initiate ACH or other electronic debits to Lessee's account for the Basic Rental and Taxes and authorizes the named depository financial institution to honor such debit entries against such account. Lessee shall provide such ACH authorization together with its account information in an ACH authorization form acceptable to Lessor. Lessee will pay a fee to Lessor of $30.00 if any ACH debit entry by Lessor against Lessee's account is dishonored.

**(d)** EACH SCHEDULE SHALL BE A NET LEASE. In addition to Basic Rent and Taxes, Lessee shall pay all customs, duties or surcharges on imports or exports, plus all expenses incurred in connection with Lessor's purchase and Lessee' use of the Equipment, including, but not limited to, shipment, delivery, installation and insurance.

**5. OWNERSHIP, LOCATION, INSPECTION AND USE:**

**(a)** The Equipment shall at all times remain the property of Lessor and remain personal property notwithstanding the manner in which it may be attached or affixed to real property, and Lessee acknowledges and agrees that it does not and shall not obtain any title to the Equipment by virtue of the execution of this Master Lease or by payment or performance hereunder, unless so specified in a Schedule or other agreement between Lessor and Lessee. At Lessor's request, Lessee will affix tags, decals, or plates to the Equipment showing Lessor's ownership. Unless authorized by Lessor in writing, Lessee is expressly prohibited from labeling or affixing to the Equipment any tags, decals, or plates that may indicate the Equipment is owned by Lessee.

**(b)** Lessee agrees not to relocate the Equipment without the prior written consent of Lessor, and then only to a location within the continental United States and at Lessee's sole expense.

**(c)** Provided Lessor complies with Lessee's reasonable security requirements, Lessor or its agent shall have free and unobstructed access to the Equipment upon prior, reasonable notice and during normal business hours for the purpose of inspection and for any other purpose contemplated in this Master Lease. Further, if the Equipment is located on leased premises, Lessee shall provide such landlord waivers as reasonably required by Lessor. At its sole discretion, Lessor may delay the placement of purchase orders, payments to vendors for Equipment or the delivery of any Equipment until Lessor's receipt of such landlord waivers.

**(d)** Lessee shall immediately provide written notice to Lessor concerning any claim of damage or loss arising out of the use, manufacture, functioning or operation of the Equipment. Lessee shall keep the Equipment free and clear of all liens, encumbrances, interests, and claims of any kind and nature.

**6. WARRANTIES:**

**(a)** Lessor hereby assigns to Lessee all manufacturers' warranties and indemnities applicable to the Equipment to the extent such are assignable, and hereby authorizes Lessee to obtain any services furnished in connection therewith. Lessor shall execute such documents of assignment as Lessee may reasonably request in connection therewith. Lessee shall reassign such manufacturers' warranties and indemnities to Lessor upon the expiration or termination of this Master Lease or the applicable Schedule and execute such documentation as may be required to affect such reassignment. To the extent such warranties and indemnities are not assignable, Lessor hereby appoints Lessee as its agent to enforce the same.

**(b)** LESSOR MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THOSE WITH RESPECT TO THE CONDITION OR PERFORMANCE OF THE EQUIPMENT, ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR WITH RESPECT TO PATENT INFRINGEMENT OR THE LIKE. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO OR DEFECTS IN THE EQUIPMENT OR THE OPERATION THEREOF.

**(c)** LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE OF ANY KIND OR NATURE WHATSOEVER, NOR SHALL THERE BE ANY ABATEMENT OF RENTAL FOR ANY REASON, INCLUDING WITHOUT LIMITATION ANY ABATEMENT ARISING OUT OF OR IN CONNECTION WITH, WHETHER DIRECTLY, INDIRECTLY, INCIDENTALLY OR CONSEQUENTIALLY, (I) THE EQUIPMENT, (II) ANY DEFICIENCY OR DEFECT THEREIN, (III) ANY INADEQUACY OF THE EQUIPMENT FOR ANY PURPOSE, (IV) THE USE, PERFORMANCE, OR LOSS OF SERVICE OF THE EQUIPMENT, OR (V) ANY LOSS OF BUSINESS RESULTING FROM ANY OF THE FOREGOING.

**(d)** Lessee will defend, protect, indemnify and hold Lessor and any Secured Party harmless against any and all losses, damages, injuries, claims, demands, liabilities, costs, and expenses, including, without limitation, reasonable attorney's fees, arising out of or in connection with use, possession or operation of the Equipment, except for any loss or damage caused by the willful fault or gross negligence of Lessor.

**(e)** The indemnities and assumptions of liabilities shall continue in full force and effect notwithstanding the termination of this Master Lease, whether by time or otherwise.

**(f)** In the event that Lessee pursues a Vendor for claims, demands, or other disputes arising in connection with any alleged default or breach by the Vendor, or in connection with any warranty for the Equipment, and there exists an Event of Default by Lessee hereunder, then Lessee shall immediately remit, transfer, and/or convey to Lessor the amount of any award, grant, or other receipt of proceeds, damages, or other compensation from or against the a Vendor necessary to cure any payment default(s) under any Schedule. Lessee's failure to make such transfer of proceeds to Lessor shall be an Event of Default hereunder. Lessee agrees to take all necessary, reasonable steps to transfer any such proceeds to Lessor, including, without limitation, by way of the execution of any assignment or security agreement.

**7. INSURANCE:**

The risk of loss of, damage to, or destruction of the Equipment shall be borne by Lessee. Lessee shall obtain and maintain for the entire Term of this Master Lease, at its own expense, insurance against loss or damage to the Equipment, including, without limitation, loss by fire and hazard (including so-called "all risks and extended coverage", including floods, windstorms and earthquakes), and theft, in such amounts that shall not be, at any point in time, less than the greater of the full costs that the Lessee would be obligated to pay to replace the Equipment ("Replacement Value") or the agreed amount that the Lessee is obligated to pay in the event that the Equipment is lost or irreparably damaged at any point in time during the Term ("Stipulated Loss Value") if specified in the Schedule. Additionally, Lessee shall be required to obtain and maintain liability insurance as may be required by Lessor from time to time. In the event that the Equipment shall be or become lost, stolen, destroyed, irreparably damaged, or shall be requisitioned or taken over by any governmental authority under the power of eminent domain or otherwise during the Term (any such occurrence being herein called a "Casualty Occurrence"), Lessee shall promptly provide written notice to Lessor. On the payment date for Basic Rental next succeeding the Casualty Occurrence, Lessee shall pay to Lessor an amount equal to the Basic Rental due on such date and any other rentals or sums then currently or past due related to such Schedule, plus an amount equal to the Replacement Value of the Equipment or the Stipulated Loss Value of the Equipment where specified in the Schedule, at which time the Schedule for such equipment shall be terminated and no further rent shall be due from Lessee. If the loss exceeds any applicable deductible and Lessee files a claim for the Casualty Occurrence in accordance with insurer's policy terms and proper filing is evidenced to Lessor, Lessee may continue to pay the Basic Rental and other sums due under the Master Lease and defer paying the Replacement Value or Stipulated Loss Value of the Equipment until the insurer pays the insurance claim to the loss

ORIGINAL

payees and/or additional insureds or rejects it. In any settlement under this Section 7, Lessee shall be entitled to a credit (not to exceed the Replacement Value or Stipulated Loss Value actually paid by the Lessee), for the amount of any proceeds of any insurance or award actually received by Lessor or the Secured Party on account of the Casualty Occurrence.

Lessee shall be the named insured and Lessor and Secured Party shall be named as additional insureds and loss payees under such policies of insurance as Lessor's and any Secured Party's interest may appear. Lessee shall furnish to Lessor and any Secured Party a certificate of insurance or other evidence reasonably satisfactory to Lessor and Secured Party that such insurance coverage is in effect and which includes a stipulation that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lessor; provided, however, that Lessor and any Secured Party shall be under no duty either to ascertain the existence of or to examine any such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof.

**8. ASSIGNMENT BY LESSOR:**
Lessor may at any time and from time to time, without consent of Lessee, assign, sell, or encumber, whether absolute or as collateral security for indebtedness of Lessor, all or any part of this Master Lease, the Equipment, and the rental payments hereunder. In the event of any such assignment, the assignee or Secured Party shall have all of Lessor's rights and obligations hereunder, and upon written notice to Lessee by Lessor or by any assignee or Secured Party with a written assignment from Lessor, Lessee shall unconditionally pay directly to such assignee or Secured Party all rental and other sums due or to become due under the Master Lease. The rights of any such assignee or Secured Party shall not be subject to any abatement, set-off defense or counterclaim which Lessee may have against Lessor prior to assignment. Notwithstanding the foregoing, any such assignment(s) (i) shall be subject to Lessee's right to quiet use and enjoyment of the Equipment so long as Lessee is not in default under this Master Lease, and (ii) shall not release any of Lessor's obligations hereunder, or any claim, which Lessee has against Lessor.

**9. MAINTENANCE AND REPAIRS:**
**(a)** Lessee shall at all times during the Term, at its own expense, maintain and keep the Equipment in good working order, repair, and condition, and make all necessary adjustments, repair, and replacements, and shall use and require each piece of Equipment to be used in a manner consistent with the warranty and contract maintenance program provided or required by the Vendor of the Equipment.

**(b)** Lessor shall have no responsibilities or obligations whatsoever with respect to the condition, operation, maintenance or repair of the Equipment.

**10. SCHEDULE TERMINATION OPTIONS AND REDELIVERY OF EQUIPMENT TO LESSOR:**
At the termination of each Schedule, Lessee shall deliver possession of the Equipment to Lessor as detailed below.

**(a)** Lessee shall return the Equipment to Lessor complete, and in the same operating order, repair, condition and appearance as on the date of the commencement of the Schedule for such Equipment, reasonable wear and tear accepted. If the Equipment consists of computers or other digital equipment containing hard drives, such Equipment shall be returned with all hard drives wiped – i.e., completely erased of all information.

**(b)** Lessee shall, at the end of the last business day of each Schedule and at Lessee's sole expense, tender to Lessor the Equipment, packed in a manner suitable for truck transportation from the then present location of the Equipment.

**(c)** Lessee shall be solely responsible and liable for and shall pay directly all transportation, insurance, rigging, drayage, packing, installation, de-installation, disconnection charges and other items of like nature, including without limitation all reasonable costs and expenses incurred with respect to shipping and delivering the Equipment to Lessor's designated location in the continental United States of America and insurance on the Equipment in route upon the termination of the applicable Schedule.

**(d)** If Lessee fails to return the Equipment in accordance with this Section 10 upon expiration of the Term then, in addition to all other Remedies available to Lessor pursuant to Section 12 hereof, Lessee shall be obligated to pay Lessor Basic Rental until the Equipment is returned to and received by Lessor.

**11. DEFAULT:**
Lessee shall have the right to quiet use and enjoyment of the Equipment provided that Lessee is not in default hereunder. Any of the following events shall constitute an event of default under this Master Lease and any Schedule (each, herein, called an "Event of Default"):

**(a)** The failure by Lessee to pay the Basic Rental or other monies when due if such failure continues for five (5) or more days after receipt of written notice thereof from Lessor or Secured Party; or,

**(b)** Default by Lessee in the performance of any other term, provision or covenant of this Master Lease as it relates to such Schedule, and Lessee fails to cure such default within thirty (30) days after receipt of written notice thereof from Lessor or Secured Party; or,

**(c)** If any representation or warranty made by Lessee in such Schedule or the Master Lease or in any document or certificate furnished to Lessor or Secured Party in connection therewith shall prove to be incorrect, false, and/or misleading at any time in any material respect; or,

**(d)** Any authorized ACH or other electronic debits to Lessee's account for the payments due hereunder are blocked or discontinued without Lessor's consent; or,

**(e)** If Lessee fails to furnish to Lessor and any Secured Party a certificate of insurance as required in Section 7 within ten (10) days after written notice from Lessor.

**(f)** Immediately and without notice from Lessor, if any of the following events occur either voluntarily to or by the Lessee or any guarantor of Lessee's obligations hereunder: if Lessee or guarantor makes an assignment for the benefit of creditors, or if either is named as a debtor in a petition in bankruptcy in the U.S. Bankruptcy Code, as amended, or, there is an admission by Lessee or guarantor in writing of its inability to pay its debts as they become due, or the filing by Lessee or guarantor of a voluntary petition in bankruptcy or any other petition or answer seeking for itself any reorganization, liquidation, dissolution, receivership, insolvency, or any other debtor relief generally under any present or future law, statute, or regulation, or the filing of any answer by Lessee or guarantor admitting, or the failure of Lessee or guarantor to deny, the material allegations of a petition filed against it for any such relief; or the adjudication of Lessee or guarantor as bankrupt or insolvent; or the seeking or consenting to or acquiescence in, by Lessee or guarantor, of the appointment of a trustee, receiver, or liquidator of Lessee, guarantor, or the property of either party; or,

**(g)** Upon forty-five (45) days, and without notice from Lessor, after (i) the commencement of any proceeding against Lessee or guarantor seeking any reorganization, liquidation, dissolution, receivership, insolvency or any other debtor relief generally under any present or future law, statute, or regulation, unless Lessee or guarantor obtains dismissal of such proceeding within the forty-five (45) days; or (ii) the appointment, without the consent or acquiescence of Lessee or guarantor, of any trustee, receiver, or liquidator of Lessee, guarantor, or the property of either party,

ORIGINAL

unless Lessee or guarantor is able to vacate such appointment within the forty-five (45) days.

**(h)** An Event of Default under any Schedule or guaranty of such Schedule shall, at Lessor's option and with written notice to Lessee, be an Event of Default of this Master Lease and any or all Schedules under this Master Lease.

**(i)** Lessee encumbers, pledges, or otherwise conveys or transfers the Equipment, or any portion thereof, to a third-party, as security or otherwise, except as otherwise permitted hereunder.

**12. REMEDIES:**
Upon the occurrence of any Event of Default, Lessor, at its option, may declare the Schedule and such other Schedules as the Lessor or Secured Party, at its option, may select, in default and exercise one or more of the following remedies ("Remedies"), each without any presentment, demand, protest, or further notice (all of which are hereby expressly waived by Lessee): (a) terminate this Master Lease and/or the Schedule(s) declared in default and terminate Lessee's rights thereunder; and/or (b) proceed by appropriate suit action or other proceeding, at law or in equity, to enforce payment and performance by Lessee of its covenants and other obligations under this Master Lease and the applicable Schedule(s), or to recover from Lessee or any and all guarantors, all damages and expenses that Lessor or Secured Party shall have sustained by reason of Lessee's default and in the enforcement of the Remedies hereunder; and/or (c) recover all amounts due on or before the date Lessor or Secured Party declared the applicable Schedule in default, plus, upon written notice from Lessor or Secured Party, such party may accelerate the obligations of the Lessee under the Schedule(s) in default and, at either's option, Lessee shall pay (i) the aggregate amount of all unpaid Basic Rentals that, absent a default, would have been payable thereunder for the full term of such Schedule plus any other obligations due or accrued hereunder (including without limitation interest accruing at the maximum rate allowed by law from the date of the default to the date of payment), plus the then Replacement Value or Stipulated Loss Value of the Equipment leased under the Schedule, upon payment of which Lessor shall transfer title to the Equipment to Lessee; or (ii) the sum of all unpaid Basic Rental that, absent the default, would have been payable thereunder for the full term of such Schedule plus any other obligations due or accrued hereunder (including without limitation interest accruing at the maximum rate allowed by law from the date of the default to the date of payment), and Lessee shall, upon written demand by Lessor or Secured Party, and at expense of Lessee, promptly return any or all Equipment leased under the Schedule(s) in default in accordance with Section 10 of this Master Lease, or Lessor or Secured Party may, personally or by its agent, at its option and without any legal process, enter upon the premises where such Equipment is located and take immediate possession of and remove the same. The exercise of these Remedies by Lessor or Secured Party shall not constitute a termination of this Master Lease or any Schedule unless Lessor so notifies Lessee in writing. Lessee shall be liable to Lessor for all costs, fees, interests, and expenses (including, without limitation, reasonable attorneys' fees) incurred by Lessor or Secured Party in enforcing any of their rights and Remedies set forth herein.

Upon the occurrence of an Event of Default by which Lessee has failed to pay timely to Lessor any Basic Rental or other monetary amount(s) due hereunder, Lessee shall be deemed to have forfeited the full amount of any Security Deposit to Lessor. Lessee and Lessor agree that the forfeiture, application, and transfer of any Security Deposit, or any portion thereof, as permitted in this paragraph, shall be deemed an indefeasible transfer, and concurrent with such forfeiture and and/or application, Lessee shall have no property interest—legal, equitable, or otherwise—in any Security Deposit, or any portion thereof.

**13. DISPOSITION OF EQUIPMENT UPON REPOSSESSION:**
In the event that Lessor or Secured Party repossesses the Equipment under Section 12 above, Lessor or Secured Party may (a) lease the Equipment or any portion thereof, in such manner, for such time and upon such term(s) as Lessor may reasonably determine or (b) sell the Equipment, or any portion thereof, at one or more public or private sales, in such a manner, and at such times and upon such terms as Lessor may reasonably determine. In the event that Lessor leases any such Equipment, any rentals received by Lessor for the remaining Term (the period ending on the date when the Term for the Equipment would have expired if an Event of Default had not occurred) for such Equipment shall be applied to the payment of (i) all costs and expenses (including reasonable attorneys' fees) incurred by Lessor in retaking possession of, and removing, storing, repairing and leasing such Equipment, and (ii) the rentals for the remainder of the Term and all other sums then remaining unpaid under this Agreement. The balance of such rentals, if any, shall be applied first to reimburse Lessee for any sums previously paid by Lessee and any remaining amounts shall be retained by Lessor. All rentals received by Lessor for the period commencing after the expiration of the Term shall be retained by Lessor. Lessee shall remain liable to Lessor to the extent that the aggregate amount of the sums referred to in clause (i) and (ii) above shall exceed the aggregate rentals received by Lessor under such leases for the respective Term(s) applicable to the Equipment covered by such leases. In the event that Lessor shall sell or otherwise dispose of (other than pursuant to a lease) any such Equipment, the proceeds thereof shall be applied to the payment of (i) all costs and expenses (including reasonable attorneys' fees) incurred by Lessor in retaking possession of, and removing, storing, repairing, refurbishing and selling or otherwise disposing of such Equipment, (ii) the rentals accrued under this Agreement but unpaid up to the time of such sale or other disposition, (iii) any and all other sums (other than rentals) then owing to Lessor by Lessee hereunder. The balance of such proceeds, if any, shall be applied first to reimburse Lessee for any sums previously paid by Lessee and any remaining amounts shall be retained by Lessor. Lessee shall remain liable to Lessor to the extent that the aggregate amount of the sums referred to in clauses (i) through (iii) above shall exceed the aggregate proceeds received by Lessor in connection with the sale or disposition of the Equipment.

**14. SUBLEASE; ASSIGNMENT; CHANGE OF CONTROL:**
Lessee may not sublease any Schedule or any Equipment or assign its rights hereunder, by Change of Control or otherwise, without the prior written consent of Lessor and/or the Secured Party. In the event that Lessor provides consent to a sublease or assignment of any Schedule or Equipment, in all instances, Lessee shall remain fully liable for its obligations, including, without limitation, payment and performance, under any such Schedule and this Master Lease. Lessee agrees to take all necessary and appropriate steps with respect to documentation necessary to affect any sublease or assignment, including documentation under which the sublessee or assignee assumes all the obligations of Lessee in connection with such sublease or assignment.

If Lessee undergoes, or plans to consummate, a "Change in Control", then Lessee shall notify Lessor in writing as early possible—but in any event not later than 10 business days before the closing of the Change in Control. Lessee's notice shall identify the nature of the transaction, and the related person(s) and entity(ies) party to such transaction. Failure to provide such notice shall be an Event of Default under this Master Lease. A "Change in Control" shall include, without limitation, a merger, any sale or disposition of the majority stock, membership, or other manner of equity interest of Lessee, a sale of substantially all of Lessee's assets, or other comparable event or transaction outside the ordinary course of Lessee's business.

**15. MISCELLANEOUS:**
**(a)** General. Lessor and Lessee acknowledge that there are no agreements or understandings, written, oral, or implied, between Lessor and Lessee with respect to the Equipment, other than as set forth herein and in each Schedule, and that collectively this

ORIGINAL

Master Lease and all Schedules executed pursuant hereto set forth the entire agreement between Lessor and Lessee with respect thereto. Any titles or captions contained herein are for convenience only, and shall not be deemed part of the context of this Master Lease. Neither this Master Lease nor any Schedule may be altered, modified, terminated or discharged except by further written agreement executed by both parties and the Secured Party. Any terms and conditions of any purchase order or other document submitted by Lessee in connection with this Master Lease which is not executed by Lessor and which is in addition to or inconsistent with the terms and conditions herein shall not be binding upon Lessor and shall not apply to this Master Lease. It is further agreed that the foregoing Master Lease supersedes all prior understandings, proposals and agreements relating to the Equipment for the Master Lease.

**(b)** No Waiver. No omission or delay by Lessor or Secured Party at any time to enforce any right or remedy reserved to it, or to require performance of any of the terms covenants, or provisions hereof by Lessee at any time designated, shall be a waiver of any such right or remedy to which Lessor or Secured Party is entitled, nor shall it in any way affect the right of Lessor or Secured Party to enforce such provisions thereafter.

**(c)** Binding Nature. Each Schedule shall be binding upon, and shall inure to the benefit of, Lessor, Lessee and their respective successors, legal representatives and assigns.

**(d)** Survival of Obligations. All agreements, representations and warranties contained in this Master Lease, any Schedule, or in any document executed pursuant hereto or in connection herewith shall be for the benefit of Lessor and any assignee or Secured Party, or the Lessee where approved by Lessor, and shall survive the execution and delivery of this Master Lease and the expiration or other termination of this Master Lease.

**(e)** Return of Security Deposit. At the end of the Term, the Lessee shall return the Equipment as provided for in Section 10. If there has been no Event of Default under this Master Lease, or any Schedule during the Term of the Schedule, Lessee has no outstanding obligations to Lessor at the end of the Term and Lessee has returned the Equipment in accordance with the Master Lease, Lessor shall return the Security Deposit for the Schedule to the Lessee within 20 business days. A Security Deposit shall not be applied to any other outstanding obligations for the Schedule, due to Lessor by Lessee at the end of the Term.

**(f)** Notices. Any notice, instruction, or consent to either party by the other which should or may be given hereunder shall be in writing and only shall be deemed received upon the earlier of receipt or three days after mailing if mailed postage prepaid by registered or certified mail at the address for such party set forth or at such changed address as may be subsequently submitted by written notice of either party.

**(g)** Applicable Law. This Master Lease has been and each Schedule will have been made, executed and delivered in the Commonwealth of Virginia. This Master Lease, any Schedule(s), and any documents executed in connection there with shall be governed and construed in all respects by the laws of the Commonwealth of Virginia without regard to its conflicts of laws provisions.

**(h)** Service of Process. Each party agrees that service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth above shall be effective service of process for any action, suit or proceeding.

**(i)** WAIVER OF JURY TRIAL. EACH PARTY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LAWSUIT OR OTHER JUDICIAL PROCEEDING ASSERTING ANY CAUSE OF ACTION OR CLAIM ARISING OUT OF OR RELATING TO THIS MASTER LEASE OR THE TRANSACTIONS OR DOCUMENTS CONTEMPLATED IN THIS MASTER LEASE. EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS MASTER LEASE BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 15(I), (C) REPRESENTS THAT IT HAS BEEN REPRESENTED BY COUNSEL AND ADVISED OF THE MEANING OF WAIVING ITS RIGHT TO A TRIAL BY JURY AND (D) REPRESENTS THAT IT IS KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVING ITS RIGHT TO A TRIAL BY JURY.

**(j)** Venue. The parties agree that the sole and exclusive jurisdiction for any legal action, suit, or proceedings arising out of this Master Lease or concerning its interpretation, construction, application, or enforcement shall be a state or federal court of competent jurisdiction for the County of Henrico, Virginia (hereinafter, the "Proper Courts"). The parties hereby irrevocably agree to submit to the jurisdiction of all of the Proper Courts for the purpose of any legal action, suit, or proceedings arising out of this Master Lease or concerning legal action, suit, or proceedings arising out of this Master Lease or concerning its interpretation, construction, application, or enforcement. To the extent permitted by law, the parties further hereby agree to waive and not to assert as a defense in any action, suit, or proceeding covered by this Section 15(j) that (1) any of the Proper Courts cannot exercise personal jurisdiction over a party; (2) any party is immune from extraterritorial injunctive relief or other injunctive relief; (3) any action, suit, or proceeding covered by this Section 15(j) may not be maintained in any of the Proper Courts; (4) any action, suit or proceeding covered by this Section 15(j) brought in any of the Proper Courts should be dismissed or transferred on the grounds of forum non conveniens; (5) any action, suit or proceeding covered by this Section 15(j) should be stayed by the pendency of any other action, suit, or proceeding in any court or tribunal other than the Proper Courts, or (6) this Master Lease may not be enforced in or by any of the Proper Courts.

**(k)** Severability. In the event any one or more of the provisions of this Master Lease and/or any Schedule for any reason shall be or become prohibited or unenforceable in any jurisdiction, such provision shall not invalidate or render unenforceable such provision in any other jurisdiction.

**(l)** Further Assurances. Lessee, upon execution of this Master Lease and thereafter upon execution of each Schedule, shall provide to Lessor such corporate documents and records and financial statements, including, without limitation, income statements, balance sheets, accounts receivable and other documentation as Lessor may reasonably request.

ORIGINAL

IN WITNESS WHEREOF, Lessor and Lessee have caused this Master Lease to be executed in their respective names by their duly appointed officers below as of the date first written above.

**Lessee: RK Pharma Inc.**

**By:** ______________________

**Name:** Ravishanker Kovi
**Title:** Executive Chairman

**Email:** ______________________

**Lessor:** CSC Leasing Co.

**By:** ______________________

**Name:** James S. Corey

**Title:** Vice President of Underwriting and Pricing